IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

**KEVIN JENKINS,**
               **Plaintiff,**

v.                                        **Civil Action No. 5:19-cv-00028-EKD**

**STEVEN KAY EYE A, INC.,**
               **Defendant.**

## FIRST AMENDED COMPLAINT

### INTRODUCTION

1.  This is an action by a consumer alleging damages for violations of the federal Motor Vehicle Information and Cost Savings Act ("Odometer Act"), 49 U.S.C. §§ 32101 et seq., and the Virginia Consumer Protection Act (VCPA), Va. Code §§ 59.1-196 et seq.  A claim is also asserted for fraud.  This action is brought against a car dealer for violations of law in the sale of a car on which it knew or should have known the odometer had been rolled back.  Plaintiff seeks actual and statutory damages under federal and state law and has requested a jury trial.

### JURISDICTION

2.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331, and the Odometer Act, 49 U.S.C. § 32710(b), and has supplemental jurisdiction of the state law claims regarding the same transaction and events under 28 U.S.C. § 1367(a).

### PARTIES

3.  Plaintiff Kevin Jenkins ("Mr. Jenkins") is a natural person who resides in the Commonwealth of Virginia.

4. Defendant Steven Kay Eye A, Inc. ("Steven Kia") is a Virginia corporation doing business as Steven Kia in Harrisonburg, Virginia, and has as its registered agent Steven D. Sodikoff, 2970 S. Main Street, Harrisonbur, Va  22801.

## STATEMENT OF FACTS

5. On January 11, 2017, Mr. Jenkins went to Steven Kia and bought a 2013 Ford Escape, VIN 1FMCU0GX8DUD25191 ("the car").

6. Exhibit A is a true and correct copy of the contract between Steven Kia and Mr. Jenkins about this transaction.

7. On Exhibit A and other documents Steven Kia represented to Mr. Jenkins that the car had 36,508 miles at the time of sale.

8. Based on the appearance of the car, Mr. Jenkins reasonably believed that the car's mileage was this low.

9. If true, Steven Kia's representation about the car's mileage meant it had only been drive about 9000 miles per year since it was built.

10. Steven Kia's representation about the mileage was not true; the car's odometer had been rolled back before Steven Kia bought it.

11. Steven Kia knew or should have known that its representation about the mileage was not true.

12. Mr. Jenkins signed every document that Steven Kia asked him to sign to buy the car.

13. As part of the sale, Steven Kia represented that it would be making Mr. Jenkins the title owner of the car.

14. As shown on Exhibit A, Steven Kia charged Mr. Jenkins a $499.00 processing fee that included processing his ownership of the car with the Virginia Department of Motor Vehicles.

15. Because Mr. Jenkins had borrowed money to buy the car from Dupont Community Credit Union to buy the car, Mr. Jenkins knew that as the lienholder the credit union would receive possession of the new title until he paid its loan in full.

16. Included in the documents that Steven Kia presented to Mr. Jenkins for signature were official Department of Motor Vehicle forms that made it appear like title was being signed over to him.

17. After paying for the car and the $499.00 processing fee and driving the car off the lot, Mr. Jenkins reasonably believed that Steven Kia would make him the title owner of the car and would process his title ownership at the Department of Motor Vehicles to show the credit union as lienholder.

18. Actually, Steven Kia knew that it would not be making Mr. Jenkins the title owner of the vehicle at the time of sale.

19. Steven Kia knew that it did not have possession of the title documents to the car at the time of the sale to Mr. Jenkins that would be necessary to make him the title owner of the car.

20. Title documents include either the current title to the car signed over by the prior owner, or the federally mandated secure Power of Attorney form that can be used when a title is lost or held by a lienholder.

21. Steven Kia knew that under Virginia law it could not transfer the title of the car to Mr. Jenkins unless it had the title documents to do so.

22. For its own profit, Steven Kia had obtained possession of the car and put it on its lot for sale even though it did not have any title documents to it.

23. For its own profit, Steven Kia concealed from Mr. Jenkins that it did not have title documents to the car.

24. Steven Kia did not have title documents from the car because the prior owner had rolled back the odometer and needed to conceal the car's true history from subsequent purchasers.

25. The prior owner that sold the car to Steven Kia needed to find a buyer who pay it for the car even though it would not be providing title documents.

26. Steven Kia knew that it was unlawful in Virginia for it to buy a car from a seller without receiving title documents from the prior owner.

27. Steven Kia knew it was unlawful under federal law for it to buy a car from a seller without receiving a federal odometer disclosure on the title documents at the time of sale.

28. The prior owner did not make any federal odometer disclosure on the title documents to Steven Kia at the time it sold the car to Steven Kia.

29. Because it had received no federal odometer disclosure on the title documents, Steven Kia had no basis to make any certification about the car's actual mileage to any subsequent purchaser.

30. Because it had received no federal odometer disclosure on the title documents, Steven Kia knew that the mileage was suspect.

31. Steven Kia should have investigated the odometer reading on the car.

32. If Steven Kia had investigated the odometer reading on the National Motor Vehicle Title Information System, it would have seen that on November 6, 2015, the car was reported as having 84,671 miles on it.

33. On that date, a title with that mileage reading was issued by state of New Jersey.

34. If Steven Kia had investigated the odometer reading through Experian's AutoCheck, it would have seen that on November 6, 2015, the car was reported as having 84,671 miles on it.

35. If Steven Kia had investigated the odometer reading through Carfax it would have seen reports of the following mileage on the car:

-September 22, 2014: 52,147

-August 7, 2015, 87,080

-January 18, 2016, 105,031.

37. Even if someone had mistakenly reported the car's mileage in kilometers rather than miles, these reports show the car had far more than 36,508 miles in January 2017.

36. Even if Steven Kia did not spend a few moments in front of a computer investigating the car's mileage, at the time of sale Steven Kia knew it had no basis to make any odometer disclosure to any subsequent purchaser about the true miles on the car because it had no signed odometer disclosure from the prior owner.

37. Steven Kia, through its employee Whitney Knight, certified to Mr. Jenkins under penalty of perjury that the car's true mileage at the time of sale to him was 36,508.

38. This certification was false.

39. Neither Whitney Knight nor any employee of Steven Kia had any basis to make any certification about the car's mileage at that time other than true mileage unknown.

40. Whitney Knight's actions were part of her normal duties at Steven Kia and she performed her job as intended in the transaction with Mr. Jenkins.

41. Steven Kia authorized or ratified the actions of its employees regarding the odometer reading and the title documents related to the transaction with Mr. Jenkins.

42. Steven Kia has a practice of not showing a consumer a vehicle's existing title documents at the time it sells a vehicle to a consumer.

43. Steven Kia has a practice of buying used cars for resale without requiring the prior owner to provide it title documents to the vehicles.

44. Steven Kia has a practice of not requiring its employees to investigate the mileage history of used cars that it buys for resale.

45. Steven Kia did not even obtain title documents to the car until after January 19, 2018, over one year later.

46. At that time, it received from an entity called Gelco Fleet Trust a replacement New Jersey title that had been issued on December 27, 2017.

47. This title shows a date of sale of January 19, 2018, from Gelco Fleet Trust to Steven Kia and states that the odometer reading on that is 39482. (Exhibit B is a true and accurate copy of that title).

48. The date of sale cannot possibly be accurate on Exhibit B because Mr. Jenkins had bought the car from Steven Kia more than a year prior.

49. If the odometer disclosure on Exhibit B was intended to be the odometer disclosure prior to the sale to Mr. Jenkins, it shows the car had more miles on it than as disclosed by Steven Kia.

50. Mr. Jenkins had no reason to know any of this wrongdoing had occurred.

51. Steven Kia was required by 49 U.S.C. § 32705 to place the federal odometer disclosure to Mr. Jenkins on the state title document assigning title to him at the time of sale.

52. One of the reasons Congress passed the placement requirements of 49 U.S.C. §32705 was so that car purchasers could see the other odometer disclosures on the title document.

53. Steven Kia never showed any title documents Mr. Jenkins about the car that showed any prior information about the vehicle.

54. Steven Kia concealed from Mr. Jenkins the information about the car history that would have been disclosed on the car's title documents.

55. Given the car's mileage history, the only true odometer disclosure would have been that its true miles were unknown.

56. A disclosure of unknown miles significantly impairs the value of the car.

57. In January of 2018, the car began to have mechanical issue.

58. The first issue began with a smell of antifreeze, and the engine coolant being low.

59. Beginning in February 2018, the car began having engine trouble and Mr. Jenkins has repeatedly had it in the shop for repairs since that time, primarily regarding overheating issues and a cracked head.

60. Having to take the car in for repairs caused Mr. Jenkins to considerable frustration and lost time.

61. In May 2018 the car was repeatedly in the shop and then back again in August 2018.

62. At that time, Mr. Jenkins did not know that the car had far more miles on it than as disclosed to him, and he did not understand why the car was having so many problems.

63. Mr. Jenkins had no reason to suspect any problems with the title or the car's odometer until February 2019.

64. At that time, because he been experience maintenance issues since early 2018, he called a car dealer to get his car appraised so that he could consider buying more reliable transportation.

65. On February 7, 2019, as part of investigating the car's value, he was told about the odometer rollback and that his car was significantly devalued because of this.

66. This was the first time he learned about the rollback issues.

67. He then spent time investigating this matter and the car's actual mileage history.

68. The car continues to have mechanical problems and stopped working again in late February 2019.

69. As an example for how much damage just one mechanical incident causes, because he did not have transportation on February 22 to 23, he missed 20 hours of paid overtime work he could have done.  This caused him to lose $986.00 on that weekend, which would have gone to his 401K and resulted in another $59.00 from the company's 6% match.

70. Mr. Jenkins has been required to purchase another vehicle to have reliable transportation, and he is no longer using the car but still paying the loan on it.

71. Mr. Jenkins has been harmed by Steven Kia's actions, including that his car is worth far less than it would be if it had only 36,508 miles at the time of sale to him and could be sold under a certification of having an accurate odometer, that he has lost significant time trying to solve this problem, that he is still making car payments and incurring interest in a far higher amount than necessary on a car that is not running, and has suffered  stress, inconvenience, and lost time.

72. By way of a Motion to Dismiss to Plaintiff's Complaint, Steven Kia has now provided one part of the title history from New Jersey about the car.

73. Exhibit C are a few pages from the New Jersey title history about the car.

74. Exhibit C proves that at that time of the sale of the car to Mr. Jenkins, the title that existed showed 84,671 miles on it.

75. If Steven Kia had asked the prior owner to provide it the title to the car before it sold the car to Mr. Jenkins, the title at that time would have showed 84,761 miles as of November 6, 2015.

76. For that title to have been issued by New Jersey, the owner at that time would have been required to report the miles that were then on the vehicle, and such documents are also in possession of the New Jersey Motor Vehicle Commission.

77. A report of 84,761 miles in 2015 is consistent with several other reports about the car's mileage at that time.

78. As shown in Exhibit C, approximately eleven months after Steven Kia sold the car to Mr. Jenkins, some person in Kansas with GE Capital Commercial Inc., informed the New Jersey Motor Vehicle Commission that "[t]here are only 36,482 miles on the vehicle."

79. The identity of that person is not possible to determine from Exhibit C.

80. The statement that were only 36,482 miles on the vehicle was false.

81. The exact relationship between GE Capital Commercial Inc., and GE Title Agent LLC, the prior owner of the car before Steven Kia, is not disclosed on Exhibit C, but they do share the same Billings, Montana, post office box number

82. The statement by that unknown person that "no fraud was intended" is false.

83. Exhibit C shows the prior owner obtained a title from New Jersey in an effort to conceal the rollback.

84. Exhibit C shows the steps taken by the prior owner to conceal the rollback, the title as it existed at the time that Steven Kia sold the car to Mr. Jenkins, and why a subsequent New Jersey title was then issued almost a year after that sale.

85. Exhibit C provides no defense to the claims against Steven Kia because the claims against Steven Kia are rooted in the events at the time of the sale and what Steven Kia did and did not do at that time.

## COUNT ONE

## VIOLATION OF MOTOR INFORMATION AND COST SAVINGS ACT

86. The allegations of the foregoing paragraphs of the Complaint are incorporated by reference.

87. As a transferor under the Odometer Act, Steven Kia was required by 49 U.S.C. § 32705(a)(1) to follow the disclosure requirements set forth in the regulations prescribed by the Secretary of Transportation.

88. Under those regulations, Steven Kia was required by 49 C.F.R. 580.5(c) to provide the federal odometer disclosure to Mr. Jenkins in writing on the title document in its possession at the time of the transfer.

89. Under those regulations, Steven Kia was required by 49 C.F.R. 580.5(e) to disclose that the odometer reading differed from the actual mileage and the true mileage was unknown.

90. Steven Kia violated 49 U.S.C. § 32705(a)(3) because it acquired the car for resale without receiving a title document with a complete odometer disclosure.

91. Steven Kia violated 49 U.S.C. § 32705(a)(1) and 49 C.F.R. 580.5 because it did not make any odometer disclosure to Mr. Jenkins on the title document it should have had in its possession.

92. Steven Kia violated 49 U.S.C. § 32705(a)(1)(B) because it never disclosed to Mr. Jenkins that the odometer reading differed from the actual mileage.

93. Steven Kia violated 49 U.S.C. § 32705(a)(2) because it falsely stated to Mr. Jenkins that 36508 was the actual mileage.

94. Steven Kia violated 49 U.S.C. § 32703(4) because it knowingly participated with the prior owner to sell a car through the wholesale car market into the retail car market in violation of 49 U.S.C. § 32705.

95. Each of Steven Kia's violations of this act and its regulations was done with intent to defraud.

96. Under 49 U.S.C. § 32710(a)(1), Mr. Jenkins is allowed to recover three times his actual damages or $10,000.00, whichever is greater and costs and reasonable attorneys' fees.

## COUNT TWO

## VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT

97. The allegations of the foregoing paragraphs of the Complaint are incorporated by reference.

98. Steven Kia was a supplier of goods in a consumer transaction as those terms are defined by the VCPA at Va. Code § 59.1-198.

99. Steven Kia violated Va. Code § 59.1-200(A)(5) and (6) by offering and selling the car as if it had the true mileage and as if Steven Kia had title documents to it.

100. Steven Kia violated Va. Code § 59.1-200(A)(7) by offering the car for sale without clearly and unequivocally indicating that the car was blemished and deteriorated and not first class because of the mileage rollback.

101. Steven Kia violated Va. Code § 59.1-200(A)(14) by misrepresenting that the car's actual mileage was 36508, by selling a car without having title documents to it, by representing that it would make him the title owner when it did not have the title documents to make him the title owner, by not informing it did not have the title documents, by making the disclosure of the odometer reading on the car's title as required by Virginia Code § 46.2-629(A), by not informing Mr. Jenkins that the odometer had been rolled back, and by not disclosing the odometer disclosure as true mileage unknown.

102. Steven Kia's violations were willful.

103. In the alternative of willful, Steven Kia's violations were negligent and were not a bona fide error as that term is used in Va. Code § 59.1-207.

104. As a result of the acts and omissions of Steven Kia in violation of the VCPA, Plaintiff has suffered loss and he may recover actual damages, statutory damages, and attorneys' fees.

## COUNT THREE

## FRAUD

105. The allegations of the foregoing paragraphs of the Complaint are incorporated by reference.

106. Steven Kia was under a statutory duty not to sell a car without having title documents for it.

107. Steven Kia was under a statutory duty to provide a proper odometer disclosure on the title documents to the car at the time of sale to Mr. Jenkins.

108. Steven Kia has adopted policies that violate these duties and that misrepresent to many consumer various aspects of the transaction with Steven Kia.

109. Steven Kia violated these duties in the sale of the car to Mr. Jenkins and concealed the car's true history from him.

110. Steven Kia concealed from Mr. Jenkins that it did not have the title documents to make him the owner of the car.

111. Steven Kia intentionally misrepresented to Mr. Jenkins it would be processing his title ownership with the Department of Motor Vehicles.

112. At the time of this misrepresentation Steven Kia knew it had no title documents to process title ownership with the Department of Motor Vehicles.

113. Steven Kia intentionally misrepresented the odometer information to Mr. Jenkins.

114. At the time of this misrepresentation Steven Kia knew or should have known that it had to represent the car's mileage as true mileage unknown.

115. Steven Kia knew or should have known these representations were false.

116. Steven Kia concealed these facts and made these misrepresentations so that Mr. Jenkins would rely on them and buy the car for the price it charged.

117. Mr. Jenkins relied on the misrepresentations and the concealment and bought the car for the price that Steven Kia charged.

118. As a result of Steven Kia's fraud, Plaintiff suffered actual damages.

119. Steven Kia's fraud was in reckless disregard of Plaintiff's and other's rights so as to justify an award of punitive damages against it.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that the Court grant the following relief:

1. Accept jurisdiction of all the claims;

2. Award Plaintiff statutory damages under the Odometer Act in the amount of $10,000.00 or three times his actual damages, whichever is greater;

3. Award Plaintiff one non-duplicative award of actual damages under the VCPA and the fraud claims;

4. Award Plaintiff at least a minimum of $500.00 for damages for each separate violation under the VCPA;

5. Award Plaintiff treble actual damages or a minimum of $1,000.00 for each separate willful violation of the Virginia Consumer Protection Act;

6. Award Plaintiff reasonable attorneys' fees under the Odometer Act and the VCPA;

7. Award Plaintiff punitive damages against Defendant because of its fraud;

8. Award prejudgment interest and costs; and

9. Award such other relief as may be just and proper.

**TRIAL BY JURY IS DEMANDED**

    Respectfully submitted,
    Kevin Jenkins
    By Counsel

/s/ Thomas D. Domonoske
Thomas D. Domonoske, VSB #35434
Consumer Litigation Associates
763 J. Clyde Morris Blvd, Suite 1-A
Newport News, VA 22802
(540) 442-7706
tom@clalegal.com

Counsel for Kevin Jenkins

## CERTIFICATE OF SERVICE

  I hereby certify that on this 26th day of June, 2019, I electronically filed this Notice of Appearance of Counsel with the Clerk of Court using CM/ECF system, which will then send a notification of such filing (NEF) to the following:

           Brad D. Weiss, Esq. (VSB # 22389)
           CHARAPP & WEISS, LLP
           8180 Greensboro Drive, Suite 1000
           McLean, Virginia 22102
           (703) 564-0220 (office)
           (703) 564-0221 (facsimile)
           Brad.weiss@cwattorneys.com

           *Counsel for Defendant Steven Kay Eye A, Inc.*

/s/Thomas D. Domonoske
Thomas D. Domonoske VSB #35434
763 J. Clyde Morris Drive, Suite 1A
Newport News, VA  23601
540-442-7706